KLOPMAN MILLS, INC., and Liberty
Mutual Insurance Company,
Appellants,

v.

Jack H. SOUTH, Appellee.

Supreme Court of Tennessee.

Feb. 9, 1976.

Tom R. Grayson, Mountain City, for appellants.

Max E. Wilson, Mountain City, for appellee.

## OPINION

HARBISON, Justice.

This is a workmen's compensation action in which appellee, an employee of Klopman Mills, sued his employer, alleging that he sustained a compensable heart attack in the scope and course of his employment. This contention was denied by the employer, which alleged that the employee had suffered from an illness not covered by workmen's compensation, and that his medical and hospital bills had been paid through group insurance coverage carried by the employer.

The employee, Jack South, was thirty-five years of age at the time of the trial and had been employed at Klopman Mills since 1968 in Mountain City, Tennessee. For a period of nearly three weeks prior to March 28, 1974 he had been traveling with other employees daily to the company plant at Bristol, Tennessee, where he was receiving instruction in a training program. There is no evidence that the employee had ever suffered from coronary disease or had experienced any sort of heart trouble prior to March 28, 1974.

On that date he and other employees drove to the Bristol plant and had a light breakfast. He then commenced his daily work, which involved some lifting and handling of equipment in connection with looms in the factory. After he had worked for an hour or so, the employee began to suffer from a headache, and later he became nauseated. He reported his illness to his supervisor, and was given aspirin at the first-aid station. Thereafter he returned to work, but continued to feel ill and to suffer

from nausea and chest pains during the rest of the day. When he arrived at home, he complained to his wife of feeling unwell, and ate little if any dinner. He retired at between 9:30 and 10:30 p. m., and awoke early in the morning hours of March 29 experiencing nausea and complaining of severe pain in his chest and left arm. Relatives took him to the Johnson County Memorial Hospital, where he was admitted as a patient under the care of Dr. F. W. Wampler. He remained in the hospital for approximately seventeen days, and was given medication consistent with a tentative diagnosis made by the doctor of acute myocardial infarction.

Testifying at the trial of this case, however, Dr. Wampler stated that this diagnosis was a tentative one at best, despite the fact that it was written into the discharge summary of the patient when he left the hospital. Dr. Wampler testified that the complaints and symptoms of the patient were consistent with the onset of a myocardial infarction, and he admitted that he had stated to the members of the family of the employee that Mr. South had experienced a mild heart attack. The doctor testified, however, that successive readings on electrocardiogram did not reveal significant or extensive changes, and that, although he treated the patient for a heart attack during his hospital stay and for several months thereafter, he became increasingly concerned as to whether he had or had not made a correct diagnosis. Finally, in August 1974, Dr. Wampler told the employee that he had concluded that the patient had not experienced a heart attack, that he was not suffering from cardiac disease, had no damage to his heart and could begin to resume activity at work.

On August 7, 1974 Dr. Wampler referred the patient to Dr. McLeod, a cardiac specialist in Johnson City, Tennessee. He received a report from Dr. McLeod to the effect that "there was no evidence of cardio-artery disease, and he felt the patient should increase his activity and return to work." Dr. Wampler testified that he then discussed the matter in detail with Mr. South on August 29, and that he

"  .   .   . explained to him that I felt the original diagnosis was in error and at that time I discussed body reactions to physical and emotional stress and made the point that while I felt that this was not deliberate thing on his past, on his part, his incapacity at that time was due to a neurosis which led to his symptoms and urged, again as Dr. McLeod advised, I urged a gradual resumption of activity with the intention that he would return to work as soon as he had regained strength."

In October 1974 the patient left the care of Dr. Wampler and consulted Dr. Fosto Obergon, a general surgeon, who reviewed his records and recommended that the patient should have "cardiac catheterization". Dr. Obergon did not diagnose the patient as having a cardiac condition, but told the patient that if he did have a cardiac problem, "he should have something done about it and if he did not he should go back to work." Dr. Obergon recommended to Mr. South that he go to Winston Salem, North Carolina to have tests made by a group of specialists there, and the patient did so.

At the trial Dr. Obergon testified that he could not say whether or not the employee did have a heart condition. After reviewing the reports from the North Carolina doctors, however, he testified:

"I can say now that this man as a part of the studies, he doesn't have a cardiac disease."

Dr. Obergon did say at one point that if the employee had in fact sustained a heart attack, "it is possible" that his activities at work on March 28, 1974 "could or might" have resulted in "his heart problem." There is nothing, however, in Dr. Obergon's testimony containing a medical opinion that the employee did in fact have a cardiac condition on or prior to March 28, 1974.

By agreement of the parties, reports from a group of specialists at the Bowman-

Gray School of Medicine of Wake Forest University at Winston Salem, North Carolina, were filed in evidence. These reflect extensive examinations and tests of the employee, and the conclusion of the physicians at this medical school were to the effect that the employee had not sustained a myocardial infarction, did not suffer from coronary disease and that his symptoms were due to "chest wall discomfort" and anxiety. The patient was found to have a duodenal ulcer.

Of course, whether the employee had or had not suffered a heart attack is not entirely dispositive of the case. If he suffered an "injury by accident" arising out of and in the course of his employment, as those terms have been used and defined in the Tennessee workmen's compensation law, he would be entitled to workmen's compensation benefits, whether the initial tentative diagnosis of myocardial infarction was or was not correct. It would be necessary, however, to establish a causal connection between the working conditions and such illness or injury by expert medical testimony, and there is a complete absence of such medical testimony in the record.

Dr. Wampler was called for direct examination by counsel for the employee. Since his testimony was unfavorable to the employee, however, counsel was permitted to interrogate him at length, and the trial judge himself engaged in considerable examination of the doctor, in an apparent effort to establish that the employee did in fact have a heart attack which was caused by his working conditions. The testimony of Dr. Wampler, however, is clear and unequivocal. When asked whether the activities and conditions under which the employee performed his work "could have contributed to the illness", Dr. Wampler testified:

"On the basis of the information I have I see no reason to believe that it did."

When pressed as to whether the working conditions "could or might" have been a causative factor, the doctor said:

"Of course you know you're dealing with medical probabilities and it seems to me that this would be very remote considering the time of onset of his symptoms as I am aware of them from the history."

Again, when questioned "from the standpoint of could or might" he said:

"I feel that it is extremely unlikely that it would have. To make a categorical statement, however, that there is no possibility it could have, I think is beyond me, but I consider that extremely remote."

There is no other medical testimony in the record upon which a causal connection between the conditions of employment and the illness of the employee could be predicated.

At the conclusion of the evidence, the trial judge found as a fact that the employee had sustained an acute myocardial infarction at his work, and that this heart condition was directly and causally related to the conditions of his employment. He commented upon the testimony of Dr. Wampler in the following terms:

"In the medical record which is a part of the official record in this case and a moving finger having written and made a public record can not go back, and change it at will without a reason. If public records could be reversed and changed, no title to any property, nobody's records in the Army or anywhere else would be safe. The doctor stated there in solemn form in a summary which is the official record of Johnson City Memorial Hospital of Mountain City, Tennessee. He said 'Jack South suffered from an acute myocardial infarction.' He stated on another occasion when he wrote a note which got into the hands of the personnel office, signed by Dr. Wampler, that 'Mr. South is currently under my care and is hospitalized. He will be totally disabled for two months or more.' That was written on the 31st day of March, 1974. This is clear-cut documentary evidence to the

management that the man claimed to have a heart attack and it was signed by a medical doctor. The medical doctor in this instance not only communicated orally, but communicated in writing the disability."

Although it is unquestionably true that the employee manifested the classic symptoms which are frequently associated with the onset of a heart attack, the medical testimony is absolutely uncontradicted in this record that he did not suffer from a myocardial infarction or other heart disease. There is nothing in the law of this state which prevents a medical doctor from changing his opinion or from correcting an initial diagnosis when he later concludes that that diagnosis was in error or based upon insufficient data. There is no evidence whatever in this record of bad faith on the part of Dr. Wampler. It simply cannot be established that the patient suffered a heart attack without competent medical testimony, and the employee's whole case is based upon the contention that he did have a myocardial infarction.

The chancellor disallowed any claim for permanent partial disability in this case, but did award the employee temporary total disability benefits from the date of the onset of his illness, March 28, 1974, until May 13, 1975, the date of the report from the Wake Forest University Medical School faculty. Were we inclined to affirm any award of temporary total disability, however, we do not see any basis in this record for doing so beyond the date of August 29, 1974, on which date the employee was advised by Dr. Wampler that he had not had a heart attack, and that he could return to work. The chancellor also allowed the employee all medical expenses up to $7500, for a period of two years from and after the date of the onset of his illness. There is no evidence as to what these bills were, but the record indicates that all of the employee's medical expenses have been paid through group insurance coverage.

We are of the opinion that the chancellor was in error in this case in allowing workmen's compensation benefits. There is no material evidence in the record to establish that the employee did in fact sustain a heart attack. Further, and more important, there is no evidence that any condition from which he actually did suffer was causally related to the activities or conditions of his employment.

The judgment of the trial court is reversed and the suit is dismissed at the cost of appellee.

FONES, C. J., and COOPER, BROCK and HENRY, JJ., concur.